Tobe Johnson v. The State.

No. 6761.     Decided January 31, 1923.

Rehearing March 21, 1923.

1.—Gaming—Exhibiting Gaming Bank—Charge of Court—Limitation.

Where, upon trial of keeping a gaming table and bank, the court charged the jury that defendant could be convicted, if he committed the offense within three years next before the filing of the indictment; a requested charge

that defendant could not be convicted for any transaction unless it occurred on the date of the alleged offense was properly refused.

### 2.—Election by State.

Where more than one transaction is proved, under one felony count in 'he indictment, upon either of which a conviction might be based, and there is no objection to the proof or request for an election, it is not within defendant's power to make the election. Following Blackwell v. State, 51 Texas Crim. Rep., 24.

### 3.—Same—Charge of Court—Principals.

Where the evidence clearly authorized the jury to reach the conclusion that defendant was interested in the result of the gambling carried on in the club, and that he and other parties were keeping and exhibiting a gaming table and bank for a common purpose, and as a joint enterprise, there was no error in the court's charge that if defendant either acting alone or in connection with others did keep for the purpose of gaming, any gaming table or bank to convict him.

### 4.—Same—Evidence—Character of Business.

Where, upon trial of keeping a gaming table, it was pertinent as developing what business was being conducted upon the premises to enable the jury to determine, whether in fact a banking game was in operation, to admit evidence that quite a number of Greeks or other foreigners patronized the club, and played at the banking game in operation.

### 5.—Same—Evidence—Cross-Examination.

Upon trial of keeping a gaming table, and etc., there was no error in permitting the State on cross-examination of a certain witness to ellicit what he knew of another witness who had been indicted for running the game at the alleged club, under the facts in the instant case.

### 6.—Same—Remarks by District Attorney—Requested Charge.

Where the remarks of a district attorney should not have been made in his objection to certain testimony, yet in the absence of a request not to consider same, the same is not reversible error.

### 7.—Same—Rehearing—Requested Charge—Defensive Theory.

Where the exception contained in the requested charge to the court's main charge specifically called the attention of the court to the contention that the defensive issue was not presented, and that defendant was attempting to have submitted the only defense he had arising under the evidence. to-wit: that his only connection with the gaming table and bank was that of betting thereon, the same was reversible error to refuse same.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. R. B. Seay.

Appeal from a conviction of keeping a gaming table and bank; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*M. T. Lively, Robert B. Allen,* and *J. C. Muse* for appellant.— Cited Joyce v. State, 234 S. W. Rep., 897; Duncan v. State, 236 id., 470; Howard v. State, 234 id., 895; Crawford v. State, 235 id., 214;

94 T. C.—6

Freeman v. State, 52 Tex. Crim. Rep., 502; Busby v. State, 51 Id., 289; Taylor v. State, 50 id., 379.

R. G. *Storey,* Assistant Attorney General for the State.

HAWKINS, Judge.—Conviction is for exhibiting and keeping a gaming table and bank; punishment two years in the penitentiary.

The indictment contained four counts; 1st, charged that appellant kept and was interested in keeping certain premises, building and room for the purpose of being used as a place to bet and wager and gamble with cards, etc: 2d charged that appellant did directly keep and exhibit for the purpose of gaming a gaming table and bank; 3d, charged that through his agent, Will Morphis, appellant did keep and exhibit a gaming table and bank; 4th, charged that as the agent and employee for the Acme Club, appellant did keep and exhibit a gaming table and bank. The court quashed the fourth count, but declined to quash the first three. However, he submitted only the 1st and 2d, The verdict finds appellant guilty under the 2d count only, and the judgment and sentence follow the verdict.

The indictment was returned on June 24th, 1921, and alleged the date of the offense as the 10th day of June, 1921. The evidence shows that upon this date a raid was made upon the premises, and the furniture and paraphernalia taken into the possession of the officers, and the operation of the place for gaming purposes ceased at that time. The place had been running for about three weeks prior to this raid, and the State's witnesses show appellant to have been present on numbers of occasions engaged in "banking" the game, but no specific date is fixed during the three weeks. The court charged the jury in substance that appellant could be convicted if he committed the offense at any time within three years next before the filing of the indictment. No objection was made to the charge for not limiting the inquiry to the specific date alleged in the indictment, but a special charge was requested and refused, by which it was sought to have the jury instructed that they could not convict for any transaction unless it ocurred on June 10th. It is urged that the offense charged in the second count of the indictment was a separate and not a continuous offense, and therefore the special charge should have been given. No exceptions were reserved to proof of the different transactions during the three weeks operation of the premises. The State having included in this trial proof of various acts of appellant during that time he might be entitled to interpose a plea of former conviction if the State should seek to again prosecute for one of the acts so developed. This, as we understand it, is the effect of the holding in Kain v. State, 16 Texas Crim. App., 282, cited by Appellant, but we do not think it supports the broad proposition here contended for. The other cases

cited do not appear to be in point. In Smith v. State, 90 Texas Crim. Rep., 273, 234 S. W. Rep., 893, the defendant was adjudged guilty of two distinct felonies charged in different counts. This is not true in the instant case. Appellant was charged in the second count with one felony only; the conviction is under that count. Where more than one transaction is proven, upon either of which a conviction might be based, and there is no objection to the proof, or request for an election, we know of no rule of law putting it within a defendant's power to make the election. This is a right to be exercised by the state upon proper motion by the defendant. Blackwell v. State, 51 Texas Crim. Rep., 24.

The evidence for the State shows that many times during the three weeks the gambling place known as the Acme Club was in operation appellant was seen banking what is known as a "crap game." The evidence is given in detail in the statement of facts—but we deem it unnecessary to set it out here—which shows, we think, without question, that as operated it was a banking game. We understand from the evidence there were four or five parties who would take turns as banker. One party would take all bets, pay all losses and generally act as banker of the game for two or three hours and would then be relieved by another one of the parties. State's witnesses testified that they had seen appellant banking the game, had seen him relieved by one of the other parties and seen him relieve them, and that he would be about the premises frequently while others were exhibiting or banking the game. There was no outstanding affirmative defense interposed by appellant. He admitted in his own testimony that he had frequently visited the Acme Club and had bet at the "crap game" the same as other players while other parties were banking. He denied specifically that he had ever acted as the banker of the game. Other witnsses for appellant testified that they had seen him there on various occasions and had seen him bet like other players but had never seen him bank the game. One witness placed upon the stand by appellant himself testified as follows:

"I saw Tobe Johnson up there just one time; him and I and a couple of fellows were playing craps with dice; all of us were banking the game; they banked it and all of us banked it; we passed it around through the four of us; I broke them all; by banking it I mean that after I would shoot the dice they would bet against me; I would shoot and he would shoot and the others would shoot the dice; the other fellows were banking when I had hold of the dice; those other two were Frank Beckham and Morphis."

The court charged if the jury found from the evidence beyond a reasonable doubt that appellant kept and exhibited for the purpose of gaming any gaming table, or bank to return a verdict of guilty, incorporating in the charge the presumption of innocence, and in-

structed that if they had a reasonable doubt as to appellant's guilt to acquit him. Appellant in a timely manner specifically excepted to the court's charge for a failure to affirmatively submit his theory of the case, towit: that he did go into the premises, but went there for the purpose of betting or wagering at a crap game operated by others. At the instance of appellant the court submitted the following special charge.

"You are told as a part of the law of this case, which you will consider and give the same weight as the main charge of the court herein, that the characteristic principal or element of a gaming table and bank is that it has a keeper, dealer or exhibitor and operator, who takes all bets, does all the fading, pays all the winnings of the bettors and takes all the losses, on the basis of one against the many, so that a person although he may be termed 'dealer' who plays on the same basis as the other players—that is, where he with each of the others in his turn deals and fades the other players, pays all bets and takes all the losses—he would not in law be guilty of keeping, dealing or exhibiting a game."

It is insisted by appellant that the foregoing special charge does not sufficiently protect appellant's rights upon his theory of the case, but that the court should have presented his defensive issues in a more specific manner, and that in order to protect the defendant in this particular the court should have given the following special charge.

"You are told as a part of the law of this case, which you will consider. and give the same weight as the main charge of the court herein, that it matters not how often the defendant may have gone to the Acme Club, if he did go, or how often he may have bet and wagered upon a gaming table or bank or shot craps, or how he may have shot said raps, or how he may have bet his said money while so shooting, if he did so, that is whether he faded the other shooters or bet his money on the 'come out' or whether he bet his money on the field or whether he bet his money with the bank or against the bank, if there was a bank; and it matters not how many others may have been betting and wagering and gambling at said game such acts would not establish or tend to establish the allegations of the indictment in this case nor the guilt of the defendant herein."

The charge given by the court at the request of appellant directly informed the jury as to the characteristic elements of a banking game and was, we think, sufficiently comprehensive to cover such defensive issues as arose from the evidence in appellant's behalf. There was no error on the part of the court in declining to give the special charge last above set out. It appears to us to be a charge upon the weight of the evidence and embraces some propositions of law to which we can not agree. In effect, we think, it would have told the jury that even though appellant might have been banking the

game, if he was using his own money in doing so he would not be guilty.

The court authoried a conviction if appellant "either acting alone or in *connection* with any other person or persons did keep for the purpose of gaming any gaming table or bank." Appellant excepted to this portion of the charge on the ground that it made appellant responsible for the acts of other persons who might have been exhibiting or keeping a gaming table or bank, and authorized appellant's conviction as an accomplice whereas he was only charged as a principal. We have not been able to agree with appellant's contention that the charge is subjet to the constrution placed upon it by him, nor do we think under the facts the charge as submitted could have in any way been harmful to appellant. The evidence clearly authorized the jury to reach the conclusion that appellant was interested in the result of the gambling carried on in the Acme Club; and that he and other parties were keeping and exhibiting a gaming table and bank for a common purpose and as a joint enterprise. If appellant either exhibited or kept the table or bank by his own acts, or knowing the unlawful purpose of others who did keep or exhibit the same, was present at the time, under our view of the law he would be guilty as a principal. If any complaint could have been urged against the charge in the form it was given it would have been that it was an incomplete charge as to principals, but this objection was not presented.

The evidence would indicate that quite a number of Greeks or other foreigners patronized the Acme Club and played at the banking game being operated. It is contended that the court committed error in permitting the Greeks who were witnesses to tell the jury how much money they lost in their gambling operations, and further for some witnesses to state that none of the Greeks they saw betting at the banking game ever won any money but always lost. We do not regard the admission of this testimony as error. It was pertinent as developing what business was being conducted upon the premises and enabled the jury to determine whether in fact a banking game was in operation as contended for by the State.

Complaint is made that the court committed error in permitting the State on the cross-examination of the witness Termin to elicit from him that he knew one Jesse Zilliox had been indicted for running the game at the Acme Club. Evidence had been developed from many witnesses, come of whom had been placed on the witness stand by the State and others by appellant, that Jesse Zilliox, Broadnax, Morphis and White at different times were running the gambling house and exhibiting the banking game; that they took turns or shifts with appellant in doing so. In rebuttal appellant placed Termin upon the stand who testified that he had been up in this gambling house eight or ten times, and had seen appellant there

several times but that he did nothing but bet at a crap game and did not bank the same. He denied that he knew personally anyone he saw at any time in the gambling house except appellant. On cross-examination the State had a right to show by this witness that he did know other parties whom he had seen there, and finally induced the witness to admit that he knew Zilliox and knew that he had been indicted for running the game; that he knew Broadnax and heard a man in the gambling house called by that name; that he had heard a man called Harry, which was the given name of White, and described him, corresponding with White's description. There was no contention upon the part of appellant that Zilliox had not been indicted for running the game at the Acme Club, and we have been unable to conclude that the statement of the witness Termin that he had been so indicted was error which could have been harmful to appellant.

While appellant's witness Belt was being examined a question was asked him relative to some statement supposed to have been made to him by the State witness Teflos which was impeaching in character. The district attorney interposed objection on the ground that no predicate had been laid, which was overruled, by the court, whereupon the district attorney remarked "Well, go ahead, it don't make any difference what he says." Exception was taken to said remark, appellant claiming that it was improper and prejudicial to appellant. The remark should not have been made, but it appears no request for the court to instruct the jury to disregard the same was presented, and we do not regard it as of such consequence as to call for a reversal. It does not come within the rule of being so obviously harmful as to call for such action on the part of this court.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

ON REHEARING,

March 21, 1923.

HAWKINS, JUDGE.—It is earnestly insisted in the motion for rehearing that we were in error in holding that the special charge given at appellant's request and set out in the third paragraph of our original opinion affirmatively covered the defensive issue in the case. Upon a reconsideration of the matter we have reached the conclusion that appellant is correct in his contention. Concisely stated, appellant's defense was that he did not keep or exhibit the gaming table or bank, and was not jointly interested with any one else in such keeping or exhibiting, and that his only connection therewith was at divers times to play in the game and bet thereat. This issue was raised directly by his own testimony, and by the evidence of

other witnesses who testified that when they had seen him present his only connection with the game was betting the same as other players. The charge given at appellant's request only informed the jury as to the characteristic elements of a banking game; further than that it announced a proposition of law with which we can not agree and was to that extent antagonistic to the main charge of the court. When fairly construed it does not pertinently submit the only defensive issue for appellant. The exception to the main charge specifically called the attention of the court to the contention that the defensive issue was not presented, and while the special charge refused should not have been given (it being upon the weight of the testimony) it again called the court's attention to the fact that appellant was endeavoring to have submitted he only defense he had arising under the evidence, to-wit: that his only connection with the gaming table and bank was that of betting thereon as any other player, and that he was not connected therewith either as a keeper or exhibitor directly, and was not jointly interested therein with other parties who might be so keeping or exhibiting the same.

For the failure to pertinently submit in an affirmative way the defensive issue suggested we have reached the conclusion that appellant's motion for rehearing should be granted, the affirmance heretofore ordered set aside, and that the judgment of the trial court should be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*